CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

September 29, 2025

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BRIAN TURNER, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>)<br>MARY GRACE ECHOLS, )<br>    Defendant. ) | Civil Action No. 7:24-cv-00864<br><br>By: Elizabeth K. Dillon<br>    Chief United States District Judge |

## MEMORANDUM OPINION

Brian Turner, a federal pretrial detainee acting *pro se*, brought this action against FBI Special Agent Mary Grace Echols pursuant 15 U.S.C. § 6851, a statute contained in the Violence Against Women Act Reauthorization Act of 2022 (VAWA). Turner alleges that intimate images from his cellphone were disclosed without his consent during a search and seizure of his cellphone during a federal criminal investigation. Turner moves for preliminary injunctive relief. (Dkt. No. 3.) Echols moves to dismiss. (Dkt. No. 14.)

The motion to dismiss will be granted, Turner's motion for an injunction will be denied, and this matter will be dismissed in its entirety.

I. BACKGROUND

**A. Plaintiff's Allegations**

Plaintiff alleges that on May 24, 2024, Judge Norman K. Moon found in a criminal action that Echols conducted an illegal search and seizure of Turner's cell phone in violation of the Fourth Amendment. *United States v. Turner*, Case No. 3:24-cr-00008 (W.D. Va.), Dkt. No. 121. Through that "illegal action intimate images" were "disclosed to an unknown number of people without the plaintiffs [sic] consent . . . ." (Compl. at 1.) Turner requests $150,000 per visual depiction and a permanent injunction. Plaintiff, as noted, has also filed a separate motion for a

preliminary injunction that would order Echols to "cease the display or disclosure of the visual depiction and if she has shared them with anyone to immediately recover those images and inform the plaintiff who has had access to and/or who she has disclosed the images to." (Dkt. No. 3 at 2.)

**B. Criminal Proceedings**

Turner was arrested on January 4, 2024, based on a criminal complaint alleging that Turner committed the offense of transportation for the purpose of prostitution in violation of 18 U.S.C. § 2421(a). (Case No. 3:24-cr-00008, Dkt. No. 3.) A third superseding indictment charges Turner with conspiracy to commit sex trafficking, sex trafficking, attempted sex trafficking, obstruction of sex trafficking investigation, facilitating prostitution, transporting individuals for purposes of prostitution, coercion and enticement, and conspiracy to obstruct enforcement of 18 U.S.C. § 1591. (*Id.*, Dkt. No. 297.) The matter is currently set for trial to begin on December 8, 2025. (*Id.*, Dkt. No. 402.)

In the order referenced by Turner's complaint, Judge Moon concluded that the warrantless search of Turner's phone violated the Fourth Amendment. Judge Moon also concluded that the good faith exception to warrantless searches did not apply. Thus, Judge Moon granted Turner's motion to suppress and suppressed the search of Turner's phone and the fruits of that search. (*Id.*, Dkt. No. 121.)

Judge Moon described the circumstances leading to Turner's arrest and the search of his phone as follows:

> This case stems from an altercation in South Carolina. As the relevant police report (which was admitted as Government Exhibit 1) observed, on July 7, 2023, Turner confronted an individual (hereinafter "Complainant") in Goose Creek, South Carolina. Allegedly, Turner forced Complainant out of a vehicle at gunpoint, entered the vehicle, and drove away. During the course of this

2

confrontation, Turner "dropped his cell phone" and ultimately left the scene without it.

Thereafter, Complainant recovered the cellphone and "turned it over to" the Goose Creek Police Department ("GCPD"). GCPD determined the phone to be "found property," a broad term used to describe, among other things, lost items. "Prior to the phone being put into evidence [as required by GCPD regulations,] a call came through from Turner's cell phone, and a woman who identified herself only as Turner's sister was advised where the phone was, and how he could get it back." The woman "stated she would let Turner know."

After the call, GCPD "placed [the phone] into evidence for safe keeping," and it was officially logged into the system on July 10, 2024. Pursuant to GCPD policy, an owner of "found property," like the cellphone, has sixty days from the date the item is logged to claim it. They can do so by scheduling an appointment, which is recorded in Microsoft Outlook, to retrieve the item. If the owner does not retrieve the item within sixty days, GCPD will destroy it.

Here, two GCPD officers testified that, to their knowledge, Turner never attempted to retrieve his cellphone while it was in GCPD custody. The officers stated that neither received a phone call from Turner, and one of the officers testified that no appointment was made to retrieve the phone. Notably, one officer also acknowledged that not all inquiries into found property are required to be documented. And the other officer admitted that various GCPD officers field phone calls about found property.

Regardless, Turner's cellphone did not sit in GCPD evidence the full sixty days. Rather, on August 3, 2023—27 days after Turner dropped his phone—the FBI requested that GCPD "hold [the phone] for [the] FBI." The phone was then released to the FBI on August 8, 2023—32 days after Turner dropped the phone.

Shortly after, Special Agent Mary Echols searched the phone without a warrant. And federal prosecutors subsequently utilized evidence from the search in the criminal complaint filed in this case. Based on that complaint, the magistrate judge issued an arrest warrant for Turner, and Turner was arrested on January 4, 2024.

(*Id.* at 1–3 (internal citations and footnotes omitted).)

3

II.  ANALYSIS

A.  **Motion to Dismiss**

Under Fed. R. Civ. P. 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted."  When considering a Rule 12(b)(6) motion, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  *See E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011).  The court need not, however, accept the plaintiff's legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court is tasked with determining whether the complaint states a "plausible claim for relief."  *Id.* at 679.  Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," a "formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

The court must liberally construe pleadings filed by a *pro se* party.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  At the same time, liberal construction "does not transform the court into an advocate" for a *pro se* litigant.

At the Rule 12(b)(6) stage, the court "may consider official public records," such as the records of Turner's criminal proceedings before Judge Moon.  *See Kiawah Island Utility, Inc. v. Westport Ins. Corp.*, NO. 2:19cv1359-DCN, 2019 WL 5395966, at *3 (D.S.C. Oct. 22, 2019) (citing *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006)).

B.  **Violence Against Women Act Claim**

Congress provides a civil right of action for:

4

> an individual whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without the consent of the individual, where such disclosure was made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure . . . .

15 U.S.C. § 6851(b)(1)(A). Thus, four elements must be satisfied: (1) the conduct must involve an "intimate visual depiction" of the plaintiff; (2) the conduct must involve a disclosure in, or using any means or facility of, interstate or foreign commerce; (3) the conduct is without the consent of the individual; and (4) the defendant knows, or recklessly disregarded, that the individual did not consent to the disclosure. *See K.I. v. Tyagi*, No. CV 1:23-2383-JRR, 2024 WL 4732703, at *5–6 (D. Md. Nov. 8, 2024).

Turner fails to state a claim because he does not allege that he is depicted in the intimate images seized from his cell phone. *See, e.g., Doe v. Alame*, Civil Action No. 3:25-CV-0329-B, 2025 WL 713120, at *2 (N.D. Tex. Feb. 24, 2025) (finding the plaintiff alleged a prima facie case because the defendant had disclosed sexually explicit images and videos of her); § 6581(b)(1)(A) (providing a cause of action for "an *individual whose* visual depiction is disclosed . . .") (emphasis added). The complaint only references "intimate images." Echols' affidavit states that there were numerous photos of women on Turner's cell phone but does not say anything about Turner being depicted in any images. (Case No. 3:24-cr-00008, Dkt. No. 3-1.)

Turner's complaint also fails to state a claim because he does not plausibly allege that Echols disclosed the intimate images to anyone after obtaining them from Turner's cell phone. Disclosure is defined by the statute to mean "to transfer, publish, distribute, or make accessible." 15 U.S.C. § 6851(a)(4). Plaintiff alleges that intimate images were disclosed because of Echols' "illegal actions" in conducting a warrantless search of his phone. (Compl. 1 ("Through that

5

illegal action intimate images" were "disclosed to an unknown number of people . . .").) This passive language does not equate to a plausible allegation that Echols disclosed the images.

Finally, Turner fails to state a claim because the statute has an exception for disclosures made in good faith to a law enforcement officer or agency and/or as part of a legal proceeding. 15 U.S.C. § 6851(b)(4)(B). As the record in the ongoing criminal proceeding demonstrates, Echols searched Turner's phone as part of a criminal investigation into sex trafficking. Echols found "numerous photos of women" that were used in online commercial sex advertisements. (Case No. 3:24-cr-00008, Dkt. No. 3-1 ¶ 10.) Federal prosecutors then used those images to obtain an arrest warrant and commence criminal proceedings against Turner. Thus, even if Turner had plausibly alleged that Echols disclosed intimate images of Turner to law enforcement, such disclosure is not actionable under the statute. Turner does not suggest that Echols disclosed the images to anyone outside of law enforcement.

In response, plaintiff asks for leave to amend the complaint to allege that many of the images depicted his genitals and showed him engaging in sexually explicit activity. Even if plaintiff were to make such a plausible allegation, it still would not overcome the other deficiencies noted by the court in this opinion. Nonetheless, the court will allow Turner the opportunity to amend his complaint.

Turner also contends that the law enforcement officer or legal proceeding exception is not applicable because of Judge Moon's suppression opinion, particularly his finding that the good faith exception to the warrant requirement was not applicable. The good faith exception as it applies to suppression is distinct from good faith as it relates to disclosure under the applicable statute. The good faith doctrine is an exception to the exclusionary rule. *See Davis v. United States*, 564 U.S. 229, 232 (2011); *United States v. Leon*, 468 U.S. 897, 907 (1984). "To trigger

6

the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 555 U.S. 135, 144 (2009). "[W]hen the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way." *Davis*, 564 U.S. at 238. Thus, the good-faith exception in the context of suppression or exclusion focuses on police conduct when *obtaining* the evidence at issue. *See United States v. Lipscomb*, 394 F. Supp. 3d 565, 567 (E.D. Va. 2019) ("The good faith exception to the warrant requirement provides that evidence need not be suppressed when the police obtain such evidence through a good faith reliance on a facially valid warrant, even if such warrant is later found to lack probable cause.") (citing *Leon*, 468 U.S. at 920). This exception has nothing to do with the disclosure of evidence once it has been obtained. Accordingly, Judge Moon's finding about the good faith exception has no bearing on whether the exception for a *disclosure* in good faith to a law enforcement officer or agency or as part of a legal proceeding precludes Turner from suing Echols under § 6851.

For these reasons, the court will grant the motion to dismiss.

### C. Preliminary Injunction

A party seeking a preliminary injunction must establish all four of the following criteria: (1) that the party is likely to succeed on the merits of his claim; (2) that the party is likely to suffer irreparable harm in the absence of a preliminary injunction; (3) that the balance of the equities tips in the party's favor; and (4) that the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Turner is not likely to succeed on the merits

because he has not stated an actionable claim for relief. Therefore, the court will deny his motion for preliminary injunctive relief.

### III. CONCLUSION

The court will issue an appropriate order granting the United States' motion to dismiss and denying Turner's motion for a preliminary injunction.

Entered: September 29, 2025.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge